OPINION
{¶ 1} Defendant-appellant L.E.P. appeals from his conviction and sentence for burglary. L.E.P.'s adjudication was held on November 3, 2004. On November 9, 2004, the trial court issued a written decision in which it found L.E.P. delinquent of burglary. The trial court committed L.E.P. to the Ohio Department of Youth Services for a minimum of one year, the maximum sentence being until he turned twenty-one.
 I {¶ 2} On October 15, 2004, Melissa Potter's apartment located at 1841 West High Street in Clark County, Ohio, was broken into and items were removed from her home including a DVD player, several DVDs, a money order in the amount of $120.00, and approximately $200.00 in cash.
 {¶ 3} Melissa testified that the day before the burglary, on October 14, 2004, L.E.P. visited her apartment and overheard a conversation between her and her fiancee in which they discussed the money order that had been placed in the top drawer of the couple's dresser. Melissa stated that L.E.P. was her nephew by marriage but that she had since divorced L.E.P.'s uncle. Testimony was presented that a person matching L.E.P.'s description was seen banging on the door to Melissa's apartment prior to the time the burglary occurred. The person who allegedly witnessed these events was a neighbor who did not testify at trial. Yet, the court allowed Melissa and Officer Brandon Peterson, the arresting officer, to testify as to what the neighbor told them that she observed. Melissa testified that based on the information the neighbor gave her, she recalled that L.E.P. had told that when he broke into houses in the past, he would bang on the door for a short period of time in order to determine whether anyone was home.
 {¶ 4} L.E.P. testified that he did not break into Melissa's apartment. L.E.P. claimed that he realized that an acquaintance of his had committed the crime when this individual offered to sell him some DVD's that were purportedly stolen from a house nearby. L.E.P. stated that he declined the offer because he had no money. L.E.P. testified that he then went to Melissa's apartment and discovered that the place had been broken into, but neither Potter nor her fiancee had returned home yet. L.E.P. claimed that he spoke to another person who lived nearby who purchased some of the merchandise from the perpetrator. L.E.P. retrieved a portion of the stolen goods and went to his parent's house. In the meantime, Melissa had returned to her house, realized that her apartment had been broken into, and called the police. Officer Peterson arrived at the apartment and investigated the crime scene. After talking to Melissa as well as her upstairs neighbor who implicated L.E.P. as the perpetrator, Officer Peterson went to L.E.P.'s house to question him, but L.E.P. was not there. Officer Peterson then received a call from dispatch stating that L.E.P. had returned to Melissa's apartment with some of the stolen goods. Based on the information he had previously received, Officer Peterson returned to the apartment and interviewed L.E.P. briefly before arresting him on burglary charges.
 II {¶ 5} L.E.P.'s first assignment of error is as follows:
 {¶ 6} "THE TRIAL COURT VIOLATED L.E.P.'S RIGHT TO COUNSEL AND DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352 AND JUVENILE RULES 4 AND 29. (TRANSCRIPT OF PROCEEDINGS)."
 {¶ 7} In his first assignment, L.E.P. argues that the trial court erred when it failed to obtain a valid waiver of counsel or appoint counsel to represent him. While acknowledging that this right may be waived, he contends that the record in this case does not demonstrate that any such waiver occurred. We agree.
 {¶ 8} Initially, it should be noted that L.E.P. was not represented by counsel at any stage of the proceedings in the trial court. "Due process requires that in a juvenile delinquency proceeding where the juvenile may be committed to a state institution many, if not most, of the rights afforded to adult criminal defendants must be afforded to the juvenile." In re:Gault (1967), 387 U.S. 1, 30. Included among these rights is the right to written notice of a specific charge, the right to be represented by counsel, the appointment of counsel for those unable to afford counsel, the privilege against self-incrimination, and the right to confrontation. Id. at 31-56.
 {¶ 9} Juv. R. 4(A) and 29(B), as well as R.C. § 2151.352, entitle a juvenile to be represented by counsel at all stages of juvenile court proceedings. In the Matter of Stovall (Aug. 6, 1999), Miami App. No. 99 CA 7; see also In re Shane (Jan. 26, 2001), Darke App. No. 1523.
 {¶ 10} Juv. R. 4(A) reads in pertinent part:
 {¶ 11} "Every person shall have the right to be represented by counsel, and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. * * *"
 {¶ 12} R.C. § 2151.352 states in pertinent part:
 {¶ 13} "Counsel must be appointed for a child not represented by his parent, guardian, or custodian."
 {¶ 14} Moreover, a juvenile's waiver of counsel, as an adult's, must be voluntarily, knowingly, and intelligently made.State v. Gibson (1976), 45 Ohio St. 2d 366. The court must fully and clearly explain to the juvenile his or her right to counsel, and the juvenile in turn must affirmatively waive that right on the record. Garfield Heights v. Brewer (1984),17 Ohio App.3d 216. Although a juvenile may waive her right to counsel, such waiver may occur only with the permission of the juvenile court. See Juv. R. 3. Moreover, Juv. R. 29(B)(3) obligates the court, at the beginning of an adjudicatory hearing, to "inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel." In re Bays
(March 14, 2003), Greene App. Nos. 2002-CA-52, 2002-CA-56. While the failure to inform a juvenile of his or her rights under Juv. 29(B) constitutes reversible error, this Court has required only substantial compliance with the rule. Id., citing In re Pyles
(Oct. 11, 2002), Montgomery App. No. 19354, 2002-Ohio-5539. A review of the facts in this case does not reveal substantial compliance with Juv. R. 29(B)(3). The trial court allowed L.E.P.'s father to sit with him during the adjudication and disposition. However, the court told L.E.P. that his father was not representing him in any capacity. At the adjudication hearing, the trial court made no mention of the counsel issue and merely asked whether L.E.P. was ready to proceed. The record is devoid of any evidence that the court explained L.E.P.'s rights to him with respect to obtaining private counsel or appointed counsel, and there is no evidence that L.E.P. waived his right to counsel at any point prior to or during trial. In fact, the record does not disclose any attempt on the part of the trial court to explain L.E.P.'s right to counsel or waiver of that right at any time. The record in the present case fails to demonstrate that the trial court even minimally complied with the requirements of Juv. 29(B)(3). Considering the record before us, we hold that L.E.P. did not validly waive his right to counsel. The State bears the burden of overcoming presumptions against a valid waiver, and here, the State has not made any attempt to dispute the assertions made by L.E.P. on appeal. State v. Dyer
(1996), 117 Ohio App. 92, 95, 689 N.E.2d 1034.
 {¶ 15} While we have a transcript of the adjudication and disposition (which contains no mention by the court of appointment of counsel or of waiver of that right), we do not have the transcript of the arraignment or pre-trial hearing. Still, there is nothing in the journal entry from either the arraignment or pre-trial hearing to indicate that L.E.P. was apprised of his right to counsel or that he waived said right.
 {¶ 16} This matter is reversed and remanded for trial so that L.E.P. is fully apprised of his right to counsel.
 {¶ 17} L.E.P.'s first assignment of error is sustained.
 III {¶ 18} L.E.P. asserts the following assignments of error:
 {¶ 19} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED THE STATE TO PRESENT HEARSAY TESTIMONY, IN ITS CASE IN CHIEF, AGAINST L.E.P., IN VIOLATION OF HIS RIGHT TO CONFRONT HIS ACCUSERS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 20} "THE TRIAL COURT VIOLATED L.E.P.'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUV. R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF BURGLARY ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT AND CREDIBLE EVIDENCE. (TRANSCRIPT OF PROCEEDINGS).
 {¶ 21} "THE TRIAL COURT VIOLATED L.E.P.'S RIGHT TO DUE PROCESS WHEN IT ADJUDICATED HIM DELINQUENT OF BURGLARY WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH
AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION. (TRANSCRIPT OF PROCEEDINGS)."
 {¶ 22} In light of our ruling with respect to L.E.P.'s first assignment, we hold that the remaining assignments of error are rendered moot.
 IV {¶ 23} Based upon the foregoing, L.E.P.'s first assignment of error is sustained, the judgment of the trial court is reversed and vacated, and this matter is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
Fain, J. and Wolff, J., concur.